

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | Criminal Action No.: 4:18-00822-MGL |
| | § | |
| MARELLE TYRECE WINDHAM | § | |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO SUPPRESS**

## I. INTRODUCTION

The Government charged Defendant Marelle Tyrece Windham (Windham) in a four-count indictment involving various narcotics and firearm crimes. Pending before the Court is Windham's motion to suppress evidence from two traffic stops in or around Hartsville, South Carolina (motion to suppress). Windham is represented by counsel. Having carefully considered the motion, the response, oral argument, the record, and the applicable law, it is the judgment of the Court Windham's motion to suppress will be granted in part and denied in part.

## II. PROCEDURAL HISTORY

This case arises out of two traffic stops conducted by Hartsville Police Department officers. The first stop occurred on March 9, 2017 (first stop), and the second stop occurred on March 15, 2018 (second stop).

On August 28, 2018, the Government filed a four-count indictment against Windham. ECF No. 3. Count One, which arises out of the first stop and subsequent arrest, charged Windham with being a felon in possession of a firearm and ammunition. Counts Two through Four arise out of the second stop and subsequent arrest. Count Two charged Windham with being a felon in possession of a firearm and ammunition. Count Three charged Windham with possession of narcotics (cocaine base) with the intent to distribute. And Count Four charged Windham with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). *Id*.

On November 9, 2018, Windham filed his motion to suppress. ECF No. 35. On December 17, 2018, the Government filed its response. ECF No. 39. On January 3, 2019, the Court held a hearing (motion hearing) on Windham's motion to suppress. Counsel for the Government and Windham made arguments and the officers who conducted both traffic stops offered testimony. ECF No. 41. The Government introduced video evidence from dash cameras and body cameras of both stops, as well as a series of maps detailing where each stop took place. ECF No. 42.

Windham asserts four grounds why his statement and physical evidence from the first stop should be suppressed. Windham avers the officer lacked probable cause, failed to timely provide *Miranda* warnings, lacked territorial jurisdiction, and the evidence is not otherwise admissible under the "inevitable discovery" doctrine. With respect to the second stop, Windham avows the officer lacked probable cause and was outside of his jurisdiction.

At the conclusion of the motion hearing, the Court denied Windham's motion to suppress as to the second stop in its entirety. With respect to the first stop, as fully detailed below, the Court denied in part Windham's motion to suppress; and it took a portion of Windham's motion to suppress under advisement.

## III. FINDINGS OF FACT

The Court determines the following facts by a preponderance of the evidence. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence." (citation omitted)); *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005) ("In the course of deciding a motion to suppress, the district court may make findings of fact. . . .").

The first stop occurred on March 9, 2017, after Hartsville Police Officer Curtis (Curtis) observed a white sedan with extremely dark tint driving down Russell Road. ECF No. 39 at 2. Curtis turned his patrol car around and, while pursuing the sedan to investigate the window tint, observed the sedan twice fail to use a turn signal within the required distance from the stop sign. *Id*. As Curtis accelerated to initiate a traffic stop, the sedan ran a stop sign and made a quick turn into a driveway. *Id*.

At the hearing, Officer Curtis testified he was just outside the Hartsville city limits when he first noticed Windham's vehicle. Officer Curtis was still within the immediate vicinity of the city of Hartsville when he followed Windham to the residence where he ultimately stopped. *Id*. at 8. The entire pursuit and subsequent arrest occurred within Darlington County, where Hartsville is located, and within three miles of the city limits.

After parking the vehicle in the driveway, the driver emerged from the vehicle, and Curtis recognized the driver as Windham. *Id.* at 2. Although Windham attempted to walk towards the residence, Curtis detained him and asked for identification. *Id*. Windham admitted he had no identification and subsequently told Curtis he did not have a driver's license. *Id*. At this point, Curtis handcuffed Windham and placed him in the backseat of his patrol car. *Id*. Several seconds later, before he was given his *Miranda* warnings, Curtis' dash camera captured the following

3

exchange: Windham said "Hey, listen, come here. Come here. I'm going to show you something. We gonna go to my car." *Id*. Curtis asked, "Whatcha got?" *Id*. Windham responded, "There's a firearm in my car, but it's registered." *Id*. Windham further elaborated the firearm is "in the backseat of my car" and "wrapped in my black jacket." *Id*. at 2-3.

Curtis searched the backseat of Windham's vehicle and found the firearm and ammunition where Windham told Curtis it was located. *Id*. at 3. After a few minutes, Curtis asked Windham if "he had anything else on [him]." *Id*. Windham stated he had some marijuana in his possession. *Id*. Law enforcement then found a $1 bill with 0.4 grams of marijuana wrapped inside of the bill inside Windham's pocket. *Id*.

The second stop occurred on March 15, 2018, when Hartsville Police Officer Reichard (Reichard) was operating a stationary radar and noticed a white sedan driving east on West Washington Street at fifty-nine miles per hour (mph) in a forty-mph zone. *Id*. Reichard attempted to pursue the sedan, but the driver accelerated and Reichard fell further behind. Hartsville Police Officer Johnson (Johnson) spotted the vehicle, initiated pursuit with his blue lights on, and ultimately pulled the vehicle over on Elmwood Drive. *Id*.

When Officer Reichard first noticed Windham was speeding, he was driving in the Hartsville city limits on West Washington Street. *Id* at 16. The subsequent pursuit and arrest took Officer Reichard outside of the Hartsville city limits, but well within Darlington County and within three miles of the Hartsville city limits.

When Reichard and Johnson approached the vehicle, Windham was in the driver's seat. *Id*. at 3. The officers asked Windham to step out of the vehicle and away from the woman and young children who were also in the vehicle. *Id*. at 3-4. As Johnson began to pat Windham down, Reichard noticed a bag fall from Windham's lap. Reichard's body camera captured the following

4

conversation: Reichard asked, "What's that baggie right there?" *Id*. at 4. After Reichard took possession of the baggie, he asked Windham, "Crack?" and Windham responded, "Yeah." *Id.* At this point, Windham was handcuffed and walked to the back of his vehicle, where Reichard informed Windham of his *Miranda* rights. *Id.*

Windham was further searched and the officers found $511 on his person. *Id*. They also found a Glock 23 .40 caliber pistol and twenty-nine .40 caliber bullets while searching the trunk of Windham's vehicle. *Id*. While on the scene, Windham admitted to previously purchasing the firearm. *Id*. He also claimed possession of the firearm the following day, March 16, 2018, during an interview with Task Force Officer Scott Gauger. *Id*.

## IV. DISCUSSION AND ANALYSIS

In Windham's motion to suppress, he advances four grounds why his statements and the physical evidence from the first stop should be suppressed and he asserts two grounds why the physical evidence from the second stop should be suppressed. The Court will address each stop and ground in turn.

### A. March 9, 2017, Stop

#### 1. Ground One: Probable Cause

In Windham's first ground for suppression, he avers Officer Curtis lacked probable cause to initiate the traffic stop that led to his arrest on March 9, 2017. The Fourth Amendment to the United States Constitution provides in part: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. "A traffic stop constitutes a 'seizure' under the Fourth Amendment and is subject to review for reasonableness." *United States v. Hill*, 852 F.3d 377, 381(4th Cir. 2017).

"Because an ordinary traffic stop is more analogous to an investigative detention than a custodial arrest," the Fourth Circuit applies the two-prong test announced in *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968), when analyzing the propriety of a traffic stop. *United States v. Green*, 740 F.3d 275, 279 (4th Cir. 2014) (internal citations omitted). To apply the test from *Terry*, the Court must determine "(1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992) (*quoting Terry*, 392 U.S. at 20).

With respect to the first prong of the *Terry* analysis, a traffic stop is justified at its inception "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). "Without question, such a violation may include failure to comply with traffic laws." *United States v. Palmer*, 820 F.3d 640, 649 (4th Cir. 2016). Stopping a vehicle to investigate a traffic infraction must be reasonable under the circumstances. *Whren v. United States*, 517 U.S. 806, 809 (1996). Such a stop is reasonable "if it is justified by probable cause or reasonable suspicion." *United States v. Johnson*, 734 F.3d 270, 274 (4th Cir. 2013).

Even when the initial traffic stop is valid, any investigative detention must not last "longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Additional questioning unrelated to the initial stop is permissible only if the initial detention has become a consensual encounter. *See United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998). Nevertheless, a prolonged detention is permissible if the police officer has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring, and a court looks at the "totality of the circumstances of each case to see whether the detaining

officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotations omitted).

Windham's entire argument rests on his assertion "there is no way the officer could have seen any traffic violation due to the relative location of the vehicle." ECF No. 35 at 10. The Court acknowledges the dash camera footage from Officer Curtis' patrol car fails to make clear whether Windham used his turn signal. However, during the motion hearing, Officer Curtis credibly testified under oath Windham failed to use a turn signal within no less than 100 feet of the turn as required, and this was the basis for the traffic stop. In addition, Officer Curtis observed Windham fail to stop at a stop sign before pulling into the driveway where Officer Curtis caught up to him.

Further, as the Government has correctly noted, Officer Curtis failed to successfully stop Windham before he reached his destination. It was only after Windham exited his vehicle Officer Curtis came into contact with Windham.

Officer Curtis had prior dealings with Windham and testified he knew Windham's license was suspended. Under these circumstances, the prevailing question is whether Officer Curtis had reasonable suspicion based on articulable facts to stop and detain Windham. *See Illinois v. Wardlaw*, 528 U.S. 119, 124 (2000), *Terry*, 329 U.S. at 30. The Court holds Officer Curtis had reasonable suspicion based on Windham's traffic violations and Officer Curtis' prior knowledge Windham lacked a valid driver's license. For these reasons, the Court will deny Windham's motion to suppress as to the first ground.

   2. **Ground Two: *Miranda* Violation**

A suspect in custody "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for

him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). The special procedural safeguards set forth in *Miranda*, however, apply only when a suspect is both in custody and subject to interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility [is not implicated by *Miranda*]." *Id*.

Generally, a person detained during a routine traffic stop is not "in custody" within the meaning of *Miranda*, and therefore, statements made to officers during the stop are admissible as evidence even in the absence of a *Miranda* warning. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). "Only if the motorist is detained to a degree associated with formal arrest will he be entitled to the *Miranda* protections for in-custody interrogations." *United States v. Sullivan*, 138 F.3d 126, 130 (4th Cir. 1998) (internal quotation marks and citation omitted).

"A person is 'in custody' for purposes of *Miranda* either if the person has been arrested or if his freedom of action has been curtailed to a degree associated with arrest. *Sullivan*, 138 F.3d at 130. The key question is whether, viewed objectively, "a reasonable man in the suspect's position would have understood his position" as being "in custody." *Berkemer,* 468 U.S. at 422.

A person is subject to interrogation when the person is "subjected to either express questioning or its functional equivalent." *Innis*, 446 U.S. at 300-301. "Functional equivalent" was defined to include "any words or action on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id*. at 301.

The Government acknowledges in its brief Windham was in custody at the time of his statement and had not yet been read his *Miranda* rights. ECF No. 39 at 10-11. The dispositive

question is whether Windham was subject to an interrogation. The Court holds Windham was subjected to interrogation.

Within one minute of arriving at the residence where Windham stopped his vehicle, Officer Curtis had handcuffed Windham and told him to wait at the back of his patrol car. Windham told Officer Curtis, "I ain't did nothin'," to which Officer Curtis responded, "You know something though." Windham replied, "Know what?" Officer Curtis instructed Windham, "come get in the back of the car right now" and then asked Windham, "Whose house is this?" Windham answered, "that my aunt house right there – you know, Miss Carrie." A few seconds later, Windham told Officer Curtis, "Hey listen, come here. Come here. I'm going to show you something. We gonna go to my car." Officer Curtis asked Windham, "whatcha got?" Windham responded, "there's a firearm in my car, but it's registered." While Windham is still handcuffed in the back seat of the patrol car, Officer Curtis asked him several minutes later if "he had anything else on him." Windham, who had not yet been given his Miranda warnings, replied that he had some marijuana in his possession.

Under these facts, Officer Curtis should have known his statements "You know something though" and "whatcha got?" were reasonably likely to elicit an incriminating response from the suspect. In between the two statements, Officer Curtis instructed Windham "come get in the back of the car right now." Similarly, Officer Curtis should have known his question "do you have anything else on you" was reasonably likely to elicit an incriminating response. Because Windham was in custody, subjected to interrogation, and had not been given his *Miranda* warning, the Court will grant Windham's motion to suppress both of his statements.

Windham also moved to suppress the Glock 22 .40 caliber pistol and ammunition seized from the backseat of the car and the marijuana found in his pocket at the time of his arrest on the

9

ground the *Miranda* violation led to the discovery of physical evidence. Windham contends the traditional "fruits of the poisonous tree" doctrine applies to bar the admission of the physical evidence discovered as a result of his statements.

When a statement is suppressed because of a *Miranda* violation, it does not follow that any physical or derivative evidence discovered as a result of the statement should also be suppressed. The "fruit of the poisonous tree" doctrine does not require suppression of physical or derivative evidence discovered as a result of those statements. *See United States v. Sterling*, 283 F.3d 216, 218-19 (4th Cir. 2002) (affirming admission of derivative evidence discovered as a result of unwarned, custodial statements and holding "fruits doctrine" inapplicable to *Miranda* violations), *cert. denied*, 536 U.S. 931 (2002); *see also United States v. Elie*, 111 F.3d 1135 (4th Cir. 1997); *accord United States v. Patane*, 542 U.S. 630, 634-44 (2004) ( "the exclusion of unwarned statements is a complete and sufficient remedy for any perceived *Miranda* violation[,]" in resolving a circuit split on this issue in favor of the Fourth Circuit rule (internal quotation marks and citations omitted)).

Thus, the remedy for a *Miranda* violation is only suppression of the unwarned statement, assuming the statement is otherwise voluntary. There is no evidence indicating Windham's statement was coerced. Further, Windham has advanced no reason why *Sterling* fails to apply in this case. For these reasons, the Court will deny Windham's motion to suppress the gun and the marijuana on the second ground.

### 3. Ground Three: Territorial Jurisdiction

In Windham's third ground, he maintains "the police officer conducting the traffic stop may have done so beyond the Hartsville, South Carolina city limits, and was, therefore, without jurisdiction to conduct a traffic stop." ECF No. 35 at 10. When an officer acts outside his

jurisdiction, there is no hard and fast rule on the constitutionality of his actions. Rather, the "ultimate touchstone" of the Fourth Amendment analysis remains "reasonableness" under all the circumstances. *Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (*quoting Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).

Here, Officer Curtis had probable cause to stop Windham after observing two traffic violations when Windham twice failed to use a turn signal within the required distance from the stop sign. The fact Windham accelerated, ran a stop sign, and was already out of his vehicle trying to walk into the residence where he stopped is further evidence of exigent circumstances.

In addition, the statute defining law enforcement jurisdiction in South Carolina states:

> "[w]hen the police authorities of a town or city are in pursuit of an offender for a violation of a municipal ordinance or statute of [South Carolina] committed within the corporate limits, the authorities may arrest the offender, with or without a warrant, at a place within the corporate limits, at a place within the county in which the town or city is located, or at a place within a radius of three miles of the corporate limits."

S.C. Code Ann. § 17-13-10.

The arrest occurred within the same county in which Hartsville is located, and it occurred within three miles of the city limits. For all these reasons, the Court will deny Windham's motion to suppress on the third ground.

### 4. Ground Four: Inevitable Discovery

In Windham's fourth ground, he contends "there can be no inevitable discovery argument through the fiction that an inventory search would have been conducted." ECF No. 35 at 11. Under the inevitable discovery doctrine, improperly seized evidence may nevertheless be admitted "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately

11

or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984).

With respect to the firearm found in the back of Windham's vehicle, the Court has already set forth the reasons why the firearm is admissible in Section IV(A)(2), *supra*, in accordance with the Fourth Circuit's holding in *Sterling*, 283 F.3d at 218-19. Because this holding is dispositive of this issue, the Court need not address Windham's argument regarding inevitable discovery here. *See Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage, thus, the strength of the first makes all the rest dicta.")

With respect to the marijuana found in Windham's pocket, the Court holds the inevitable discovery doctrine is applicable. Windham was lawfully arrested, transported to the detention center, and upon his arrival, he was frisked and his property was collected during intake procedures. Because of the uniform procedures and protocols, it is inevitable any contraband still in Windham's possession at the time of intake would have been discovered. Thus, the Court will deny Windham's motion to suppress on the fourth ground.

**B.    March 15, 2018, Stop**

    **1.  Ground One: Probable Cause**

Windham's first ground for suppressing evidence arising from the second stop is he was not speeding and committed no traffic infractions justifying this stop. ECF No. 35 at 12. Windham's contention is unfounded and contrary to the weight of the evidence. Officer Reichard credibly testified he clocked Windham going fifty-nine mph in a forty mph zone with his radar. In addition, the video evidence from Officer Reichard's patrol car camera shows Windham pulling

farther away from the officer after Officer Reichard initiated his pursuit of the vehicle. For these reasons, the Court will deny Windham's motion to suppress as to the first ground.

### 2. Ground Two: Territorial Jurisdiction

Windham's second ground for suppressing evidence is the same territorial jurisdiction argument he raised in his motion to suppress evidence from the first stop. As set forth more fully above, Windham's unlawful conduct was first noticed while he was driving within the Hartsville city limits. Windham's ongoing unlawful behavior continued outside of the city limits, but stayed within the immediate vicinity of the city of Hartsville. The arrest occurred within Darlington County, the same county in which Hartsville is located, and it occurred within three miles of the city limits. For all of these reasons, the Court will deny Windham's motion to suppress as to the second ground.

## V. CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Windham's motion to suppress is **GRANTED IN PART** and **DENIED IN PART.** Windham's motion to suppress is **GRANTED** with respect to the statements he made during the first stop on March 9, 2017. The remainder of his motion is **DENIED**.

**IT IS SO ORDERED.**

Signed this 23rd day of January, 2019, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
